UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DAVID BOHMFALK, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF SAN ANTONIO, | § | SA-09-CV-0497 OG (NN) |
| ROLANDO LOPEZ, | § | |
| JOANN KESSLER, | § | |
| UNKNOWN EMPLOYEE(S) OF | § | |
| CITY OF SAN ANTONIO, | § | |
| DAUGHTERS OF THE REPUBLIC | § | |
| OF TEXAS, INC., and | § | |
| DANIEL MARTINEZ, | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

TO:    Honorable Orlando Garcia
       United States District Court

This report and recommendation addresses the pending motions to dismiss[1] and the pending motion to amend.[2] I have jurisdiction to issue this report and recommendation under 28 U.S.C. 636(b) and the district judge's order of referral.[3] The district court has jurisdiction over this case because it involves a question of federal law—specifically, a question under 42 U.S.C. § 1983.

**Background of the case**. This case arose from an incident in which plaintiff David Bohmfalk traveled to the Alamo Plaza and burned a flag of Mexico to "demonstrate and protest

---

[1]Docket entry #s 3 & 4.

[2]Docket entry # 8.

[3]Docket entry # 16.

against Senate legislation granting amnesty to illegal aliens. . . ."[4] Dissatisfied with his treatment by law enforcement officials and spectators, Bohmalk sued the City of San Antonio (the City), two of the City's park rangers—Rolando Lopez and Joann Kessler (together, the park rangers), unknown City employees, the Daughters of the Republic of Texas, and deceased Alamo Ranger Daniel Martinez. After Bohmfalk burned the flag, he was first approached by Martinez. Lopez and Kessler arrived later and cited Bohmfalk with "illegal burning within the city limits." The City later dismissed the charge. Bohmfalk filed this case in state court, but the City removed the case to this court because the case presents a federal question. The City and the park rangers moved to dismiss Bohmfalk's claims against the park rangers.[5] As part of his response, Bohmfalk asked to amend his complaint.

**Bohmfalk's claims**. Bohmfalk sued the park rangers under section 1983 for violating his right to be free from unreasonable seizure. Bohmfalk alleged that the park rangers detained him unnecessarily while they tried to determine an appropriate charge. Bohmfalk complained that no probable cause existed for an arrest. Bohmfalk also sued the park rangers and the City for the following state-law claims: false imprisonment, malicious prosecution, intentional infliction of

---

[4] Docket entry # 1, exh. 1, p. 3 of plaintiff's original petition.

[5] A defendant in a civil action may move to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

> To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

emotional distress, defamation, and conspiracy to commit those torts.

<u>The constitutional claim against the park rangers</u>. The park rangers asked for dismissal of the constitutional claim against them on qualified-immunity grounds. They assumed the complaint alleged violations of the First Amendment and the Fourth Amendment, but reasonably construed, Bohmfalk's original petition alleges only a Fourth Amendment claim. The petition alleges a violation of the Fourth Amendment's prohibition of unreasonable seizure because it complained about the following: "the detention itself lasted longer than necessary and constituted an unreasonable investigatory stop," "there was no probable cause as a matter of law for an arrest," "the officers could not have reasonably believed that they had probable cause to arrest," "the search and seizure . . . was unreasonable in length, subject matter and actions," "[t]here was no justification for the arrest as at least one officer was more personally offended . . .," and "no probable cause to begin with."[6] These allegations logically flow from a claim that the park rangers violated the Fourth Amendment's prohibition of unreasonable seizures. Although the complaint relied on the park rangers' alleged reaction to Bohmfalk's protest against immigration legislation as motivation for the complained-about conduct,[7] it did not expressly allege that the park rangers interfered with Bohmfalk's First Amendment right to express himself.[8] The crux of Bohmfalk's claim is that the park rangers lacked probable cause to believe he committed a crime

---

[6] Docket entry # 1, exh 1, pp. 7-9 of plaintiff's original petition.

[7] *See id*. at p. 8 (alleging "[t]here was no compelling governmental interest in interfering with Plaintiff's expression of speech," "Plaintiff was obviously singled out because of the content of his speech," & "nothing about the situation would lead a reasonable officer to view the actions as unprotected 'fighting words'").

[8] The park rangers could not have interfered with Bohmfalk's protest because they arrived at Alamo Plaza after the flag-burning incident.

because he exercised his First Amendment right of free expression, the park rangers should have known that he had a right to express himself by burning a flag, and the park rangers unreasonably detained him while they sought a basis for charging him. The park rangers maintain that they are immune from suit because probable cause existed for charging Bohmfalk with illegal burning.

The examination of a claim of qualified immunity is a two-step inquiry. First, a court must determine whether the plaintiff alleged a violation of a clearly established right. Second, the court must determine whether the [official's] conduct was objectively reasonable in light of the legal rules applicable at the time of the alleged violation.[9] Because no question exists that the right to be free from unreasonable seizure, or not to be arrested absent probable cause, was a clearly established constitutional right when Bohmfalk was cited for illegal burning,[10] the dispositive question is whether the park rangers' conduct was objectively reasonable in light of the legal rules applicable at the time of the alleged violation.

"[A]n arrest, with or without a warrant, must be based on probable cause. Probable cause exists when the facts available at the time of the arrest would support a reasonable person's belief that an offense has been . . . committed and that the individual arrested is the guilty party."[11]

> A plaintiff must clear a significant hurdle to defeat qualified immunity. "[T]here must not even 'arguably' be probable cause for the . . . arrest for immunity to be lost." That is, if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will

---

[9] *Fontenot v. Cormier*, 56 F.3d 669, 673 (5th Cir. 1995).

[10] *See Blackwell v. Barton,* 34 F.3d 298, 302 (5th Cir. 1994).

[11] *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994).

4

apply.[12]

"Probable cause depends on whether the officers 'possess[ed] knowledge that would warrant a prudent person's belief that [the suspect] had already committed or was committing a crime.'"[13]

Despite Bohmfalk's insistence that no probable cause existed, his factual allegations establish probable cause. Section 1101.3.1 of the City's Fire Prevention Code makes it unlawful for any person to burn any trash or other combustible material within the City limits without a permit. Bohmfalk alleged that he burned a flag. He did not allege he had a permit. A flag is made of combustible material. Bohmfalk's allegations support a reasonable person's belief that Bohmfalk unlawfully burned a combustible material without a permit.

Bohmfalk suggests that because he labeled his flag-burning as speech, the park rangers should have abandoned all investigation and sent him on his way. But Bohmfalk's allegations described how the situation escalated by the time the park rangers arrived, provoking visitors to the Alamo to shout obscenities. That the park rangers questioned him about his mental state[14] and conferred with others about what actions might be appropriate[15] is a reasonable response to a situation that escalated to threats of violence.

To the extent that Bohmfalk complains about the length of his detention—according to

---

[12] *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). *See Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir. 1997) ("In other words, there must not even "arguably" be probable cause for the search and arrest for immunity to be lost.").

[13] *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. Cir. 1998) (internal citation omitted).

[14] Bohmfalk alleged that the park rangers questioned him upon their arrival, to include questioning him about his mental state and medication use.

[15] Bohmfalk alleged that "the ultimate charge was provided to [the park rangers] by an unknown person or persons connected with the Park Police over the radio or dispatch."

5

Bohmfalk, the park rangers questioned him for over an hour—Bohmfalk indicated that he was released once the park rangers issued the citation. "In assessing whether a detention is too long in duration to be justified as an investigative stop, [a court] examine[s] whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."[16] Here, Bohmfalk alleged that the park rangers began to question him when they arrived at the Alamo Plaza. Bohmfalk further alleged that the park rangers discussed "which 'felonies' he could be charged with,"[17] and questioned him about his "mental state, medication use and other inappropriate and intrusive questions," during which time the park rangers used their radios to discuss possible charges with unknown persons. Once the park rangers issued the citation, Bohmfalk stated that "he was finally allowed to leave with his citation." These allegations do not indicate a lack of diligence. Instead, the allegations indicate the park rangers pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. Arriving on the scene after Bohmfalk burned the flag, and encountering on-lookers shouting obscenities and threats, the park rangers discussed appropriate charges and conferred with others to determine an appropriate charge. After they determined what charge applied, they issued a citation and escorted Bohmfalk to his vehicle. The alleged conduct is not objectively unreasonable.

Bohmfalk insists that the park rangers could not have reasonably believed that they had probable cause to arrest him, but Bohmfalk's allegations do not indicate that the park rangers

---

[16] *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

[17] Docket entry # 1, p. 4 of plaintiff's original petition.

arrested Bohmfalk. Instead, Bohmfalk alleged that the park rangers issued him a citation and escorted him to his car. Viewed true, the factual allegations fail to state a claim because probable cause existed for issuing the citation, and once the park rangers determined what charge applied, they released Bohmfalk and escorted him to his car. Bohmfalk stated that discovery about allegations bearing on qualified immunity is necessary,[18] but such discovery cannot change Bohmfalk's factual allegations as to probable cause. Discovery would serve no purpose.

To the extent that Bohmfalk intended to allege that the park rangers violated his First Amendment free-speech right, Bohmfalk failed to overcome the park rangers' defense of qualified immunity.[19] Bohmfalk failed to show that a person has a First Amendment right to burn a flag within city limits without a burn permit.[20] In their motion to dismiss, the park rangers argued that "[t]he law was (and is) not reasonably clear that citing someone for violating a burn ordinance would violate that person's rights under the first amendment."[21] Bohmfalk did not demonstrate that clearly-established law permitted him to burn a flag within city limits without a permit. Instead, Bohmfalk challenged of the validity of the City Fire Prevention Code and asserted that "no basis exists for a peace officer to argue that any burning object or occasion within the city limits would be sufficient for probable cause since the Ordinance itself provides

---

[18] Docket entry # 9, p. 5.

[19] *See Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 408 (5th Cir. 1989) ("The party seeking damages from an official asserting qualified immunity bears the burden of overcoming that defense.").

[20] *See Thomas v. City of Dallas*, 175 F.3d 358, 363-64 (5th Cir. 1999) (explaining that the court must determine whether the alleged constitutional right was clearly established at the time of the actions underlying the lawsuit).

[21] Docket entry # 3, p. 5.

7

for various exceptions, exemptions and permitted."²² Bohmfalk failed to overcome the park rangers qualified-immunity defense because he did not show that he had a clearly-established right to burn a flag within city limits without a permit.

The state-law claims against the park rangers. The park rangers and the City asked for dismissal of the state law claims against the park rangers. The park rangers relied on section 101.106(a) of the Texas Tort Claims Act (TTCA). Section 101.106(a) provides: "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter."²³ The park rangers and the City maintain that Bohmfalk's complaint constituted an irrevocable election that bars the state-law claims arising from Bohmfalk's complaints about his detention and subsequent citation. The park rangers and the City argued that the district court must dismiss the claims under section 101.106(e) of the TTCA because the City moved to dismiss the park rangers.

Section 101.106(e) provides as follows: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Even though this section explicitly refers to "a suit ... filed under this chapter," the Supreme Court of Texas recently interpreted "under this chapter" to mean "all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees. . . ."²⁴ The Supreme Court of Texas stated that the provision's

---

²²Docket entry # 9.

²³Tex. Civ. Prac. & Rem. Code § 101.106(a) (Vernon 2005).

²⁴*Mission Consol. Indepen. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).

8

"apparent purpose was to force a plaintiff to decide at the outset whether an employee acted independently . . . thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery."[25] Because Bohmfalk sued all defendants including the City and the park rangers, he made an irrevocable election that barred his state-law claims against the park rangers. Once the City asked for dismissal of the claims against the park rangers,[26] the state-law claims against the park rangers were subject to dismissal.[27] Although Bohmfalk asked to amend his complaint to avoid this result,[28] an amendment will not help because Texas courts have determined that the plaintiff's "original petition, not his amended petition, is the proper one to scrutinize to determine whether dismissal

---

[25] *Garcia*, 253 S.W.3d at 657.

[26] Docket entry # 4.

[27] *Accord Modica v. Reyna*, No. 08-CV-871, 2009 WL 2827975, at *5 (E.D. Tex. Sept. 2, 2009) ("It follows that the *Garcia* decision and Section 101.106(a) and (e) are applicable to this case. Because the Beaumont Housing Authority has filed a motion to dismiss Mr. Reyna, an employee of the Beaumont Housing Authority, and Ms. Modica filed suit against both the Housing Authority and Mr. Reyna, under Section 101.106(e) her claims against the individual employee are barred and Mr. Reyna should be immediately dismissed from the suit.); *Dorward v. Ramirez*, No. 09-CV-0018-D, 2009 WL 2777880, at *15 (N.D. Tex. Aug. 28, 2009) ("[P]ursuant to § 101.106(e), these claims must also be dismissed with prejudice as to the individual defendants because Dorward alleges that each is a City employee and, in the instant motion, the City seeks dismissal of the claims against them."); *Fabian v. Dunn*, No. 08-CV-269-XR, 2009 WL 2461207, at *9 (W.D. Tex. Aug. 6, 2006) ("Under Texas law, '[i]f a suit is filed under [the Texas Tort Claims Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.' The City of San Antonio has so moved. Therefore, any common law causes of action brought against the Officer Defendants . . . are dismissed pursuant to Section 101.106(e)."); *Golden v. Austin County Sheriff's Dep't*, No. H-09-817, 2009 WL 1835448, at *5 (S.D. Tex. June 26, 2009) ("These claims, whether for intentional torts or for negligence, were brought 'under' the Texas Tort Claims Act. Accordingly, the election-of-remedies provision bars the plaintiffs' common-law tort claims against the individual defendants. These claims are dismissed.") (internal citation omitted).

[28] *See* docket entry #s 8 (motion to amend) & 10 (proposed amended complaint), p. 10.

under section 101.106(e) is appropriate."[29]

**Recommendations**. For the reasons discussed above, I recommend granting the motions to dismiss filed by the park rangers and the City (docket entry # 3 & 4) and DISMISSING the claims against the park rangers. If these recommendations are accepted by the district court, I will deny Bohmfalk's motion to amend his complaint because the proposed amendment includes claims against the park rangers.[30]

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 10 days

---

[29]*Brown v. Ke-Ping Xie*, 260 S.W.3d 118, 122 (Tex. App.—Houston [1 Dist.] 2008, no pet.). *See Garcia v. City of Harlingenn*, No. B-06-CV-134, 2009 WL 159583, at *12 n.7(S.D. Tex. Jan. 21, 2009) (applying the same rule). *See also Rogers v. Bonnette*, No. 04-CV-118, 2008 WL 4646926, 5 (W.D. Tex. Oct. 20, 2008) ("[T]he relevant election in this case was made when Plaintiff filed his original complaint—he filed a suit against an employee of a governmental unit, triggering section 101.106(b).").

[30]Permitting Bohmfalk to amend his complaint before the district court considers the motions to dismiss would likely confuse the issues in this case. Considering Bohmfalk's proposed claims for malicious prosecution, defamation and libel are barred by limitations, *see* Tex. Civ. Prac. & Rem. Code § 16.002(a) ("A person must bring suit for malicious prosecution, libel, slander, or breach of promise of marriage not later than one year after the day the cause of action accrues."), and his proposed claim for intentional infliction of emotional distress lacks allegations of extreme and outrageous conduct, *see Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003) ("Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'") (internal citations omitted), Bohmfalk would be in a better position to propose an amendment after disposition of the motions to dismiss.

after being served with a copy of same, unless this time period is modified by the district court.[31] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[32] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[33]

**SIGNED** on November 23, 2009.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[31] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[32] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[33] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).