## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DAVID BOHMFALK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **CITY OF SAN ANTONIO,** | § | **SA-09-CV-0497 OG (NN)** |
| **UNKNOWN EMPLOYEE(S) OF** | § | |
| **CITY OF SAN ANTONIO,** | § | |
| | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION

**TO:   Honorable Orlando Garcia**
**United States District Court**

This report and recommendation addresses the pending motion for summary judgment.[1]  I have jurisdiction to issue this report and recommendation under 28 U.S.C. 636(b) and the district judge's order of referral.[2]  The district court has jurisdiction over this case because it involves a question of federal law—specifically, a question under 42 U.S.C. § 1983.

**Background of the case**.  This case arose from an incident in which plaintiff David Bohmfalk left his home in Hondo, traveled to the Alamo Plaza, and burned a flag of Mexico to "demonstrate and protest against Senate legislation granting amnesty to illegal aliens. . . ."[3]  Bohmfalk was cited under the City's fire code for "illegal burning within the City limits."[4]  The

---

[1]Docket entry # 36.

[2]Docket entry # 16.

[3]Docket entry # 1, exh. 1, p. 3 of plaintiff's original petition.

[4]Bohmfalk was cited under a prior version of the fire code.  That parties agree that the language of the prior code and the current code are similar enough not to make a difference in this case.

charge was later dismissed.  Unsatisfied with this result, Bohmalk sued the City of San Antonio (the City), two of the City's park rangers, unknown City employees, the Daughters of the Republic of Texas (the Daughters), and deceased Alamo Ranger Daniel Martinez.  Since that time, the district judge dismissed the claims against the park rangers, the Daughters, and Martinez.[5]  The claims that remain are Bohmfalk's claims against the City and unknown City employees.  The City moved for summary judgment on those claims.  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[6]

**Bohmfalk's claims**.  Bohmfalk sued the City under section 1983 for violating his constitutional rights by failing to properly train and/or supervise its peace officers in such a manner that the park rangers were unable to determine whether he had committed a crime when he burned the flag.[7]  Bohmfalk complained that unknown City employees authorized the park rangers to arrest[8] him even though no probable cause existed to believe he had committed a criminal offense.  Bohmfalk contended that the park rangers' lack of discipline and the City's failure to discipline the park rangers evidenced a clear custom or policy of violating

---

[5]Docket entry #s 34 (dismissing the section 1983 claims against the park rangers on qualified-immunity grounds and the state-law claims under section 101.106(a) of the Texas Tort Claims Act) & 40 (dismissing claims against the Daughters and Martinez because Bohmfalk settled those claims).

[6]Fed. R. Civ. P. 56(c).

[7]Docket entry # 1, p. 9.

[8]Although Bohmfalk refers to an arrest in his pleadings, Bohmfalk was never arrested.  Bohmfalk was cited for violating the fire code and escorted to his vehicle.

constitutional rights by failing to correct serious misjudgments of it peace officers.  Bohmfalk also alleged that the City's fire ordinance is unconstitutionally vague.   In addition to his constitutional claims, Bohmfalk sued the City for various state-law claims.

**The failure to properly train and/or supervise claim**.  Bohmfalk did not identify the constitutional right he contends was violated by the City's alleged failure to properly train and/or supervise its peace officers.  Notwithstanding that deficiency, the City asked for summary judgment on the ground that Bohmfalk lacks evidence about park ranger training or any evidence of any custom, policy or practice that the City improperly trains park rangers.[9]

> [T]o hold a municipality liable under § 1983 for its employees' acts, a plaintiff must show that a policy of hiring or training caused those acts.  Such a showing requires proof that (1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury.[10]

Because Bohmfalk bears the burden of proof on his failure-to-train claim, the City may move for summary judgment, relying solely on the pleadings, depositions, answers to interrogatories, and admissions on file.[11]

To show that no evidence of improper training exists, the City submitted Bohmfalk's deposition.  When asked about his evidence of improper training, Bohmfalk testified that the park rangers' actions were contrary to the Texas Commission on Law Enforcement Officer Standards and Education training because the park rangers told him that he had violated city,

---

[9]Docket entry # 36, p. 8.

[10]*Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

[11]*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

3

state and federal homeland security laws and called him a domestic terrorist.[12]  Bohmfalk explained, "That runs counter to anyway that any reputable police–police academy teaches its officers to talk to people."[13]

This testimony does not show that park rangers are improperly trained because it represents a conclusory allegation and lacks evidentiary support.[14]  This evidence satisfies the City's burden to show the absence of a genuine issue of material fact as to a necessary part of Bohmfalk's claim—that is, whether an inadequate training policy directly caused Bohmfalk's alleged deprivation.

Because the City satisfied its burden, the burden shifted to Bohmfalk to raise a fact question about the adequacy of park ranger training.[15]  Bohmfalk presented no summary judgment evidence about the City's efforts to train park rangers.  Bohmfalk suggests that the dismissal of the citation for illegal burning evidences a failure to train.  There are many reasons the citation may have been dismissed, but no evidence exists about why the citation was dismissed.  Even if the citation was dismissed, Bohmfalk's deposition testimony shows that he violated the City's fire code by burning combustible material within the city limits and without a permit.  Under these circumstances, the mere dismissal of the citation does not raise a fact

---

[12]Docket entry # 36, exh. A (Bohmfalk's deposition), p. 92.

[13]*Id*. at p. 92.

[14]Such unsupported, conclusory allegations are insufficient to defeat a motion for summary judgment. *Galindo v. Precision Am. Corp*., 754 F.2d 1212, 1216 (5th Cir. 1985).

[15]*Campbell v. Sonat Offshore Drilling*, 979 F.2d 1115, 1119 (5th Cir. 1992) ("Once a movant has made such a showing, the nonmovant must establish each of the challenged essential elements of its case for which it will bear the burden of proof at trial.").

question about park ranger training.  To the extent that Bohmfalk alleges the City has a custom or policy of violating constitutional rights by failing to correct serious misjudgments of it peace officers, Bohmfalk presented no competent summary-judgment evidence raising a fact question about such a custom or policy.  When questioned about his evidence that the City has a custom or policy of violating individual constitutional rights by failing to correct serious misjudgments of peace officers, Bohmfalk admitted he had no such evidence.[16]  The City is entitled to summary judgment on Bohmfalk's failure-to-train claim.

**Bohmfalk's challenge based on the City fire code**.  Bohmfalk alleged that the City fire code is "so unconstitutionally vague that it is patently unclear if flag-burning as a form of protest would be precluded under the ordinance and there are no exceptions to allow or protect flag burning as free speech."[17]  The City asked for summary judgment on this claim on grounds that the fire code is not vague.  Chapter 11, section 307.2.2, of the fire code makes it unlawful for any person to burn trash or any other combustible material within the City limits without a permit.

A criminal statute such as the fire code "may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests."[18]  "Vagueness may invalidate a criminal law for either of two independent reasons.  First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage

---

[16]Docket entry # 36, exh. 1 (Bohmfalk's deposition), p. 99.

[17]Docket entry # 1, pp. 9-10.

[18]*City of Chicago v. Morales*, 527 U.S. 41, 52 (1999).

arbitrary and discriminatory enforcement."[19]

To determine whether the fire code is vague, the district judge must consider the language of the applicable provision.  Section 307-2.2 makes it "unlawful for any person to burn or cause to be burned, any trash, brush, tree limbs, grass, trees, leaves, paper, boards, planks, shavings, or any other combustible materials whatsoever within the corporate limits of the City, without first having a permit . . . ."[20]  This language provides the kind of notice that enables ordinary people to understand what conduct is prohibited because it lists materials that may not be burned without a permit and clarifies what is prohibited by including the language "any other combustible materials."  As written, a person does not have to guess whether what he seeks to burn is prohibited: if the material is combustible, burning without a permit is prohibited.  Even if a person seeks to burn something that the person does not consider to be trash, brush, tree limbs, grass, trees, leaves, paper, boards, planks, or shavings, the language of the provision makes it clear that burning any combustible material is prohibited.

An ordinary person would know that the provision prohibited burning of a flag because a flag is made of combustible material.[21]  An ordinary person would understand that the person must obtain a permit if he sought to burn any combustible material within the City limits.  The inclusion of the words "any trash, brush, tree limbs, grass, trees, leaves, paper, boards, planks, shavings, or any other combustible materials" indicates that the provision was enacted to protect

---

[19]*Morales*, 527 U.S. at 56.

[20]The fire code permits burning in an approved incinerator or container, but Bohmfalk does not challenge that aspect of the fire code.

[21]Bohmfalk knew that a flag was made of combustible material because he decided to burn a flag of Mexico in lieu of destroying the flag in some other manner.

the City, its citizens, and property from the dangers of fire, not to regulate speech.  The provision does not fail to provide the kind of notice that enables ordinary people to understand what conduct the provision prohibits.

In addition, the provision does not authorize or encourage arbitrary and discriminatory enforcement because the provision proscribes all burning without a permit.  The provision does not single out burning intended as speech, or burning for any other purpose.  Because the provision proscribes all un-permitted burning, the provision provides no discretion for arbitrary or discriminatory enforcement.

To the extent that Bohmfalk argued that requiring a permit is an unconstitutional impediment on the right to free speech,[22] the provision does not authorize the denial of a permit based on speech.  The provision authorizes the denial of a permit for two reasons: the fire chief or his designee finds from his inspection of the property that the burning would (1) constitute a fire hazard or danger to adjoining or nearby property, or (2) violate air pollution standards.  Neither of these circumstances addresses speech.  Because neither of the circumstances permits the fire chief to deny a permit for burning intended as speech, the provision does not authorize or encourage arbitrary and discriminatory enforcement.  The City is entitled to summary judgment on Bohmfalk's challenge to the fire code.

**Bohmfalk's state-law claims**.  Bohmfalk sued the City and the unknown City employees for false imprisonment, malicious prosecution, intentional infliction of emotional distress, defamation, and conspiracy to commit those torts.  The City asked for summary judgment on these claims on immunity grounds.  Immunity from suit bars claims against a municipality unless

---

[22]Docket entry # 42, p. 4.

the State expressly consents to the suit.[23]   Texas has waived its immunity for certain tort claims,[24]

but the waiver specifically excludes intentional torts.[25]   False imprisonment, malicious

prosecution, intentional infliction of emotional distress, and conspiracy are intentional torts.[26]

Under the exclusion, the City is immune from these claims.   Defamation is not always an

---

[23]*Fed. Sign v. Tex. So. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997).

[24]Texas's waiver of immunity provides as follows:

> A governmental unit in the state is liable for:
>     (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>             (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>             (B) the employee would be personally liable to the claimant according to Texas law; and
>     (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon's 2005).

[25]*Id.*, § 101.057 (stating that waiver of immunity does not apply to claims "arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities).

[26]*See Randall's Food Markets v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) ("The essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law."); *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996) ("To prevail in a suit alleging malicious prosecution . . . the plaintiff must establish: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages."); *Kroger Tex. Ltd. Partnership v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006) ("To prevail on [a] claim [of intentional infliction of emotional distress, the plaintiff] had to prove by a preponderance of the evidence that: (1) [the defendant] acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused her emotional distress; and (4) the emotional distress was severe."); *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996) ("Civil conspiracy is an intentional tort.")

8

intentional tort,[27] but the City is still immune from that claim because the claim does not involve a personal injury arising from the operation or use of a motor-driven vehicle, or personal injury caused by a condition or use of tangible property.  To the extent that Bohmfalk's claims are cognizable,[28] the City is immune from suit.

  **Recommendation**.  I recommend granting the City's motion for summary judgment (docket entry # 36) and entering summary judgment in favor of the City and its unknown employees on the following claims: (1) the failure-to-train claim because no evidence raises a fact question about whether park ranger training caused the alleged deprivation, (2) the vagueness challenge to the fire code because the challenged provision provides the kind of notice that enables ordinary people to understand what conduct is prohibited and does not authorize or encourage arbitrary and discriminatory enforcement, and (3) the state-law claims because the City is immune from suit.  If the district judge accepts this recommendation, a final judgment is appropriate because prior orders have disposed of all other claims and all other defendants.

  **Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1)

---

[27] *WFAA-TV v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) ("To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with . . . negligence, if the plaintiff was a private individual, regarding the truth of the statement.").

[28] As noted in my first report and recommendation, Bohmfalk's claims for malicious prosecution, defamation and libel are barred by limitations.  *See* Tex. Civ. Prac. & Rem. Code § 16.002(a) ("A person must bring suit for malicious prosecution, libel, [or] slander. . . not later than one year after the day the cause of action accrues.").  The claim for intentional infliction of emotional distress lacks allegations of extreme and outrageous conduct.  *See Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003) ("Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'") (internal citations omitted).

electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[29] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[30]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[31]

   **SIGNED** on June 4, 2010.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[29]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[30]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[31]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).